**FILED**
August 04, 2026
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: Christian Rodriguez
DEPUTY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **JENNIFER LYNN CAIN, INDIVIDUALLY AND AS NEXT FRIEND OF C.C., A MINOR, AND DANNY CAIN,** | § | |
| **Plaintiffs,** | § | **CIVIL ACTION NO. 1:25-CV-02053-SH** |
| **v.** | § | |
| **HYATT CORPORATION D/B/A HYATT REGENCY LOST PINES SPA AND RESORT,** | § | **JURY DEMANDED** |
| **Defendant.** | § | |

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

TO THE HONORABLE SUSAN HIGHTOWER, UNITED STATES MAGISTRATE JUDGE:

NOW COME, Plaintiffs Jennifer Lynn Cain, Individually and as Next Friend of C.C., a Minor, and Danny Cain (collectively, "Plaintiffs"), and file this their First Amended Complaint against Defendant Hyatt Corporation d/b/a Hyatt Regency Lost Pines Spa and Resort ("Defendant" or "Hyatt"), and respectfully show the Court as follows:

## I. PARTIES

1. Plaintiff Jennifer Lynn Cain is an individual residing in Tomball, Harris County, Texas. She brings claims in her individual capacity for the personal injuries she sustained, and in her representative capacity as Next Friend of C.C., a Minor.

2. Plaintiff C.C. is a minor child of Plaintiff Jennifer Lynn Cain. C.C. appears through Jennifer Lynn Cain as Next Friend pursuant to Federal Rule of Civil Procedure 17(c), and resides in Tomball, Harris County, Texas.

3. Plaintiff Danny Cain is an individual residing in Tomball, Harris County, Texas. At all times material to this lawsuit, Danny Cain was, and he remains, the lawful spouse of Plaintiff Jennifer Lynn Cain.

4. Defendant Hyatt Corporation d/b/a Hyatt Regency Lost Pines Spa and Resort is a foreign corporation organized under the laws of a state other than Texas, with its principal place of business at 150 North Riverside Plaza, 14th Floor, Chicago, Cook County, Illinois, and is registered to do business in the State of Texas. Defendant has been served with process, has appeared, and is before the Court.

## II.
## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a) because complete diversity of citizenship exists between Plaintiffs, who are citizens of Texas, and Defendant, which is a citizen of Illinois, and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is proper in the Western District of Texas, Austin Division, under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District and Division.

7. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.

## III.
## FACTUAL BACKGROUND

8. On April 5, 2024, Plaintiffs were registered, paying guests at the Hyatt Regency Lost Pines Spa and Resort located at 575 Hyatt Lost Pines Road, Cedar Creek, Bastrop County, Texas 78612 (the "Premises"). At all material times, Plaintiff Jennifer Lynn Cain was an invitee on the Premises.

9. At approximately 10:10 p.m. on April 5, 2024, Plaintiff Jennifer Lynn Cain was descending an interior staircase and stairwell on the Premises (the "Subject Stairwell") when she lost her footing and fell, sustaining severe injuries (the "Incident").

10. The treads, risers, and landing surfaces of the Subject Stairwell were finished in wood or wood-like material of substantially uniform grain, color, and sheen. There was no contrasting nosing, contrast strip, abrasive strip, photoluminescent marking, signage, or other visual or tactile demarcation distinguishing one tread from the next, or distinguishing the treads from the landing. To a guest descending the stair, the tread edges were not reasonably perceptible.

11. The illumination of the Subject Stairwell was inadequate for safe descent. The only light fixtures serving the stairwell were mounted at a height too great to usefully illuminate the tread surfaces, and the light they cast was dim. The combination of insufficient illumination and the absence of any visual differentiation between treads, risers, and landings rendered the Subject Stairwell unreasonably dangerous. Each condition independently posed an unreasonable risk of harm; in combination, they compounded the risk of serious bodily injury.

[PHOTOGRAPHS OF PLAINTIFF'S INJURIES ON THE FOLLOWING PAGES]



***(PLAINTIFF'S INJURIES)***



***(PLAINTIFF'S INJURIES)***



*(PLAINTIFF'S INJURIES)*



***(PHOTOGRAPH OF THE UNLIT STAIRWELL)***



***(PHOTOGRAPH OF THE UNLIT STAIRWELL)***

12. As a result of the Incident, Plaintiff Jennifer Lynn Cain sustained injuries including a fractured ankle in multiple places, injuries to her leg and back, and a head injury. Her injuries required surgical repair and have resulted in permanent impairment and disfigurement.

13. Defendant's Security Officer, Wes Kirby, prepared and completed Guest Incident Report No. 2024-04-001-G documenting the Incident. Defendant's Maverick's Manager, Jorge Caamal, placed a 911 call. Defendant's Front Desk Manager, Jessica Martinez, was provided contact information for Plaintiff Danny Cain.

14. Acadian Ambulance Service responded to the Premises (Call No. 1593, Unit No. 921). MeChell Whiteman-Williams, EMT-Basic, and Michael Shapard, CCT Paramedic, assessed and treated Plaintiff Jennifer Lynn Cain on the Subject Stairwell and transported her to St. David's South Austin Medical Center. Multiple witnesses observed a responding paramedic activate a handheld flashlight at the scene because the fixed lighting in the Subject Stairwell was insufficient to permit the performance of medical procedures.

15. The individual previously identified in Plaintiffs' Original Complaint as "Night Manager John Doe" has since been identified as Elliote Walthour, also known as Elliott Walthaur, who served as Defendant's Night Manager and Manager on Duty on the evening of April 5, 2024.

16. Gilbert Omar Garza, who was present on the Premises as a guest attending the same retreat, heard Plaintiff Jennifer Lynn Cain fall and yell, and heard her minor daughter exclaim, "my mom fell." Mr. Garza and his wife arrived moments after the fall. Mr. Garza has sworn that he did not witness the fall itself. He has sworn that the Subject Stairwell was an unreasonably dangerous condition because of how dark it was while guests used the stairs, and that the combination of the poor lighting and the wood grain and color of the step created an extremely dangerous condition.

17. Critically, affiant Katherine Garza, who was also a guest at the Premises, heard Defendant's night manager admit that Plaintiff Jennifer Lynn Cain's fall was not the first incident of the night and that other guests had already fallen in the Subject Stairwell, and has sworn that he had neither roped off the stairwell nor placed any warning sign. Defendant therefore had actual, subjective awareness — that very evening, and before Mrs. Cain's fall — that the Subject Stairwell was then causing guests to fall.

18. On the same date, guests Justin Whitson and his wife were also on the Premises. Mrs. Whitson lost her footing and tripped on the same Subject Stairwell, arising from the same inadequate lighting and the same inability to differentiate the treads from the landing. Mr. Whitson has provided a sworn affidavit concerning the hazardous condition of the Subject Stairwell.

19. Additional guests present on the Premises, including Katherine Garza, Christopher Case, and Jason Vitanza, have provided sworn affidavits concerning the Incident and the dangerous condition of the Subject Stairwell. A further guest, an emergency-room nurse identified in Defendant's records only as "Katy R.," rendered aid to Plaintiff Jennifer Lynn Cain immediately after the fall.

20. Notwithstanding its knowledge of the dangerous condition of the Subject Stairwell — including its knowledge, acquired earlier that same evening, that guests were falling on it — Defendant did not raise the illumination level, did not post any warning, did not apply any contrast marking or anti-slip treatment, did not station an employee at the stairwell, and did not close or reroute the stairwell. Defendant instead continued to operate the Subject Stairwell as the lighted egress route for guests leaving its food-and-beverage outlet, and continued to channel guest foot traffic onto it, including Plaintiff Jennifer Lynn Cain.

21. Plaintiff C.C., a minor, was present at or in the immediate vicinity of the Subject Stairwell at the time of the Incident and contemporaneously perceived Plaintiff Jennifer Lynn Cain's fall and its immediate aftermath through her own senses. Two affiants, Katherine Garza and Gilbert Omar Garza, each heard C.C. exclaim, "my mom fell," immediately after the fall and before either of them reached Mrs. Cain's side. Four affiants — Christopher Case, Jason Vitanza,

Katherine Garza, and Gilbert Omar Garza — observed C.C. in the immediate aftermath and describe the child as worried, scared, stressed, and terrified. C.C. did not learn of the Incident from third persons after the fact.

## IV.
## SWORN WITNESS TESTIMONY

22. Five percipient witnesses have executed sworn affidavits concerning the Incident and the condition of the Subject Stairwell. Each was sworn to and subscribed on June 10, 2024 before a notary public of the State of Texas. Their sworn testimony is pleaded as factual allegation and is summarized below.

### A. Affidavit of Christopher Case

23. Christopher Case was a registered guest at the Premises on April 5, 2024. Mr. Case and his business partner organized a team-building retreat at the resort for more than twenty employees and their family members, among them Plaintiffs Jennifer Lynn Cain and Danny Cain. Mr. Case has sworn that he arrived at the scene after 10:00 p.m. and saw Mrs. Cain lying on her back on the landing after her fall. He has sworn that he did not witness the fall itself.

24. Mr. Case has sworn that while he was present he heard an EMS paramedic state, "turn the lights up, I can't see anything we are doing," and that the area was "very dimly lit and hard to see."

25. Mr. Case has sworn that he checked the time on his telephone and that it took paramedics approximately fifty to sixty minutes to arrive; that Mrs. Cain lay on the floor in excruciating pain for over fifty minutes; that he heard her screaming each time she was moved and

again each time the paramedics touched her; that he would rate her pain a ten out of ten; that her left ankle was completely swollen; and that the resort did nothing in terms of providing her with any medical attention.

26. Mr. Case has sworn that after the fall he interacted with resort management and staff present at the location of the fall, and that they stated, "this has come up before in our monthly staff meetings." He has sworn that the management and staff knew the Subject Stairwell was an unreasonably dangerous condition based on their comment that they had had problems before.

27. Mr. Case has sworn that on the day after the Incident, a female resort manager drove up to him and his business partner at the resort's skeet shooting range and admitted that she and the resort staff had discussed the dangerous condition of the Subject Stairwell at prior staff meetings.

28. Mr. Case has sworn that he walked up and down the Subject Stairwell; that it was poorly lit; that the color and type of wood grain on the steps made it very difficult to see; that the last step before the landing blended into the landing, making it an unreasonably dangerous condition for resort guests causing them to fall; and that the combination of the poor lighting and the last step created an extremely dangerous condition. He has further sworn that he saw Mrs. Cain's daughter, that she was very worried and scared, and that he tried to comfort her.

**B. Affidavit of Jason Vitanza**

29. Jason Vitanza was a registered guest at the Premises on April 5, 2024 and co-organized the same retreat. He has sworn that he saw Mrs. Cain lying on her back on the landing

after her fall, that he heard her screaming every time she was moved, and that he did not witness the fall itself.

30. Mr. Vitanza has sworn that he told Defendant's night manager to block off the Subject Stairwell to prevent people from using the dangerous, poorly lit stairwell, and that the night manager refused to rope off or block the stairwell. Mr. Vitanza has further sworn that he advised the night manager that it would be a good idea to place blue or fluorescent tape to warn resort guests of the step before the landing, and that the night manager refused to do so. In Mr. Vitanza's sworn words, the night manager "was more concerned about not damaging the stairs."

31. Mr. Vitanza has sworn that the resort did nothing in terms of providing Mrs. Cain with any medical attention; that a guest who was a nurse tended to her injuries; and that her left ankle was black and blue and very swollen.

32. Mr. Vitanza has sworn that on the day after the Incident, a female resort manager drove up to him and Mr. Case at the skeet shooting range and admitted to both of them that she and the resort staff had discussed the dangerous condition of the Subject Stairwell at prior staff meetings.

33. Mr. Vitanza has sworn that the stairwell was poorly lit; that the color and type of wood grain on the steps made them very difficult to see; that the last step before the landing blended into the landing; and that the poor lighting together with the last step blending into the same pattern as the landing created an extremely dangerous condition. He has sworn that he saw Mrs. Cain's daughter, that she was terrified, and that those present tried to console her.

**C. Affidavit of Katherine Garza**

34. Katherine Garza was a registered guest at the Premises on April 5, 2024, attending the retreat with her husband's employer. She has sworn that she heard Mrs. Cain fall and yell; that she also heard Mrs. Cain's daughter say, "my mom fell"; and that she arrived at Mrs. Cain's side moments after she heard Mrs. Cain yell. She has sworn that she did not witness the fall itself.

35. Mrs. Garza has sworn that two other guests — an emergency-room nurse identified as Katy R. and Katy R.'s mother — arrived at Mrs. Cain's side at the same time; that a resort employee named Jorge, dressed in all black, assisted and brought ice and pillows; and that she remained at Mrs. Cain's side the entire time holding her hands. She has sworn that Mrs. Cain said she heard something snap and repeated that statement multiple times, that Mrs. Cain was shaking and in excruciating pain, and that Mrs. Cain lay on the ground in pain for over forty-five minutes.

36. Mrs. Garza has sworn that the resort was ill equipped to deal with an injury of this kind; that Katy R. asked a resort employee dressed in a maroon shirt whether he had anything with which to splint Mrs. Cain's ankle; and that she heard that employee respond, "we don't have anything . . . not even a bandage."

37. Mrs. Garza has sworn that Defendant's night manager showed up; that resort employees clearly lacked training to deal with incidents involving injuries to guests and were not communicating with one another about the Incident or Mrs. Cain's need for medical attention; and that the night manager had a terrible demeanor, was not concerned about Mrs. Cain, was very defensive, and was "more concerned about protecting the flooring and stairway, rather than Jennifer's need for medical attention and wellbeing."

38. Mrs. Garza has sworn that she heard Defendant's night manager admit that this was not the first incident of the night and that other guests had fallen in the Stairwell; that the night manager knew of prior incidents and of guests falling before Mrs. Cain's fall; and that he had not roped off the stairwell or placed any warning signs to protect guests from falling.

39. Mrs. Garza has sworn that she heard the resort employee dressed in the maroon shirt admit that "the dimly lighted stairwell had been discussed at the employee safety meeting the week before."

40. Mrs. Garza has sworn that she saw the female paramedic turn on her flashlight; that the paramedics had to use a flashlight to see Mrs. Cain's arm in order to insert an IV; that she heard the paramedics state how poor the lighting was and that it was making it impossible to see anything they were doing; and that she heard one paramedic state, "it's no wonder why she fell down the stairs due to the poor visibility."

41. Mrs. Garza has sworn that she saw Mrs. Cain's daughter and that the child was scared and stressed out about her mother. She has further sworn that the stairwell was poorly lit, that the color and type of wood grain on the steps made them very difficult to see, and that the step before the landing blended in color and wood grain into the landing, making it an unreasonably dangerous condition for resort guests.

**D. Affidavit of Gilbert Omar Garza**

42. Gilbert Omar Garza was a registered guest at the Premises on April 5, 2024, attending the retreat held by his employer. He has sworn that he heard Mrs. Cain fall and yell; that

he also heard Mrs. Cain's daughter say, "my mom fell"; and that he arrived with his wife to help Mrs. Cain moments after they heard her yell. He has sworn that he did not witness the fall itself.

43. Mr. Garza has sworn that he saw a large bruise and bump form around Mrs. Cain's left ankle; that she was in severe pain and shaking while his wife held her hands; that the Subject Stairwell was an unreasonably dangerous condition because of how dark it was while guests used the stairs; and that the combination of the poor lighting and the wood grain and color of the step created an extremely dangerous condition. He has sworn that he saw Mrs. Cain's daughter and that she was scared and stressed out about her mother.

**E. Affidavit of Justin Whitson**

44. Justin Whitson was a registered guest at the Premises on April 5, 2024, attending a work team-building retreat with his family. He has sworn that he walked up and down the Subject Stairwell; that he noticed it was poorly lit and that the type of wood grain on the steps made it very difficult to see, especially the last step before the landing; that the stairwell being poorly lit made it difficult to see and to walk down the stairs safely; that he used the stairwell at the hotel; that the last step before the landing blended into the landing, making it an unreasonably dangerous condition for hotel guests causing them to fall; and that "it is difficult to tell where the steps going down the stairwell end before you get to the landing."

**F. The Affidavits Corroborate One Another**

45. The five affidavits are mutually corroborating on every matter material to liability: (a) the Subject Stairwell was poorly lit; (b) the color and wood grain of the treads were indistinguishable from one another and the last step before the landing blended into the landing; (c) Defendant's management and staff had discussed the dangerous condition of the Stairwell at

staff and safety meetings before April 5, 2024, including at an employee safety meeting the week before; (d) Defendant's night manager knew, before Mrs. Cain's fall, that other guests had already fallen on the Subject Stairwell that same night, and had neither roped it off nor posted any warning; (e) a guest expressly asked the night manager to block the stairwell and to mark the step before the landing, and the night manager refused both requests; (f) responding paramedics could not see well enough to render aid without a flashlight, and one remarked that the poor visibility explained the fall; and (g) Mrs. Cain's minor daughter perceived the fall and was scared, stressed, and terrified in its immediate aftermath.

## V.
## AGENCY, RESPONDEAT SUPERIOR, AND VICE-PRINCIPAL ALLEGATIONS

46. At all material times, Elliote Walthour, Wes Kirby, Jorge Caamal, Jessica Martinez, and each other employee, agent, servant, or representative of Defendant referenced herein was acting within the course and scope of his or her employment or agency for Defendant, and in furtherance of Defendant's business. Defendant is therefore vicariously liable for their acts and omissions under the doctrine of *respondeat superior*.

47. Further, and for purposes of Plaintiffs' claim for exemplary damages, Elliote Walthour was a vice principal of Defendant. As Night Manager and Manager on Duty, Mr. Walthour was confided with the management of a department or division of Defendant's business, possessed authority to employ, direct, and discharge employees of Defendant, and possessed authority to control the illumination of the Subject Stairwell, to post warnings, to station personnel, and to close or reroute the Subject Stairwell. Mr. Kirby, as Security Officer, and Mr. Caamal and Ms. Martinez, as departmental managers, likewise exercised delegated managerial authority. In

the alternative, Defendant authorized, approved, confirmed, or ratified the acts and omissions described herein.

## VI.
## MISNOMER AND ALTER EGO

48. In the event any party is misnamed or is not included herein, Plaintiffs contend that such was a misnomer and/or that such party is an alter ego of a party named herein. Alternatively, Plaintiffs contend that any applicable corporate veil should be pierced so that such party is properly included in the interest of justice.

## VII.
## CAUSES OF ACTION

### COUNT ONE — NEGLIGENCE
### (Plaintiff Jennifer Lynn Cain, Individually)

49. Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

50. The elements of a negligence cause of action under Texas law are: (1) the existence of a legal duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) damages proximately caused by the breach. Proximate cause comprises both cause in fact and foreseeability. Plaintiff Jennifer Lynn Cain pleads and satisfies each element.

51. Element One — Duty. As the owner and operator of a hotel and resort open to the paying public, and as the party in possession and control of the Premises and the Subject Stairwell, Defendant owed Plaintiff Jennifer Lynn Cain, an invitee, a duty to exercise ordinary care for her safety. That duty included the duty to exercise ordinary care in the design, installation, inspection,

maintenance, illumination, marking, operation, and warning of the Subject Stairwell, and the duty to act as a hotel operator of ordinary prudence would act under the same or similar circumstances.

52. Element Two — Breach. Defendant breached that duty of ordinary care through the following acts and omissions, each of which is pleaded separately and in the alternative:

a. failing to provide adequate illumination of the treads, risers, and landings of the Subject Stairwell;

b. failing to provide any visual demarcation, contrasting nosing, contrast strip, abrasive strip, photoluminescent marking, or other visual or tactile cue distinguishing the treads from one another and from the landing;

c. selecting, approving, installing, and maintaining tread, riser, and landing materials of substantially uniform grain, color, and sheen that concealed the tread edges from descending guests;

d. failing to inspect the Subject Stairwell adequately or at all;

e. failing to maintain, service, repair, or replace the lighting serving the Subject Stairwell, including failing to detect and replace dimmed, burned-out, or non-functional lamps;

f. mounting or permitting the mounting of light fixtures at a height that rendered them incapable of usefully illuminating the tread surfaces;

g. failing to adopt, implement, follow, and enforce adequate policies, procedures, and minimum safety standards governing stairwell safety, illumination levels, and hazard identification on the Premises;

h. failing to train its employees, agents, and contractors — including its Manager on Duty, security personnel, and food-and-beverage management — to identify, report, mitigate, correct, and warn of unreasonably dangerous stairwell conditions;

i. failing to warn Plaintiff Jennifer Lynn Cain of the dangerous condition of the Subject Stairwell, of which Defendant knew or in the exercise of ordinary care should have known;

j. failing to correct or remedy the dangerous condition of the Subject Stairwell;

k. failing to close, restrict, or reroute the Subject Stairwell, or to station an employee at it, after acquiring actual knowledge on the evening of April 5, 2024, that guests were falling or nearly falling on it;

l. failing to comply with applicable building codes, life-safety codes, accessibility standards, walking-surface standards, and hospitality-industry standards governing stairway geometry, handrails, illumination, and visual demarcation;

m. failing to perform any adequate hazard analysis, safety analysis, safety review, or code review of the Subject Stairwell;

n. failing to supervise the employees, agents, and contractors responsible for the inspection, maintenance, illumination, and upkeep of the Subject Stairwell;

o. failing to investigate, document, report, or act upon prior incidents, complaints, near-falls, and falls involving the Subject Stairwell; and

p. such other acts and omissions as discovery may reveal.

53. Element Three — Proximate Cause and Damages. Each of the foregoing acts and omissions was a cause in fact of the Incident, in that but for Defendant's conduct the Incident and Plaintiff's injuries would not have occurred, and the conduct was a substantial factor in bringing about her injuries. The harm was foreseeable: a hotel operator of ordinary prudence would have anticipated that guests descending an inadequately lit stairwell whose tread edges are visually indistinguishable from the landing would lose their footing and fall. Defendant's own knowledge, acquired earlier that same evening, that guests had already fallen or nearly fallen on the Subject Stairwell establishes that the danger was not merely foreseeable but actually foreseen. Defendant's breaches proximately caused Plaintiff Jennifer Lynn Cain's injuries and damages as set forth in Section VIII.

**COUNT TWO — NEGLIGENT ACTIVITY**
**(Plaintiff Jennifer Lynn Cain, Individually — Pleaded in the Alternative to Count Three)**

54. Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

55. Under Texas law, a negligent-activity claim and a premises-liability claim are independent theories of recovery. To recover on a negligent-activity theory, the plaintiff must have been injured by or as a contemporaneous result of an ongoing activity of the defendant, rather than

by a condition created by that activity. Plaintiff Jennifer Lynn Cain pleads and satisfies each element.

56. Element One — Ongoing Activity. On the evening of April 5, 2024, Defendant was engaged in ongoing, affirmative activity on the Premises, including: (a) operating and controlling the interior lighting of the Subject Stairwell, including the programmed evening and night lighting levels then in effect; (b) actively operating its food-and-beverage outlet and channeling, directing, and permitting guest foot traffic to and from that outlet by way of the Subject Stairwell as the guests' egress route; and (c) monitoring, responding to, and managing guest incidents through its Manager on Duty and its security personnel.

57. Element Two — Negligence in the Conduct of the Activity. Having been informed earlier that same evening that one or more guests had fallen or nearly fallen on the Subject Stairwell, Defendant negligently continued each of those activities without interruption or modification. Defendant continued to hold the stairwell open and to route guests down it, at the same inadequate programmed illumination level, without raising the light level, posting a warning, applying a temporary contrast marking, stationing an employee at the stair, or rerouting guests to an alternate egress path. A hotel operator of ordinary prudence conducting those same activities, with that same knowledge, would have done at least one of those things.

58. Element Three — Contemporaneous Injury and Damages. Plaintiff Jennifer Lynn Cain was injured by and as a contemporaneous result of that ongoing activity itself. She was injured while Defendant was in the act of operating the Subject Stairwell as a lighted guest egress route at the illumination level Defendant was then maintaining, and while Defendant was in the act of channeling her and other guests onto that stairwell with actual knowledge that it was at that

very time causing guests to fall. Defendant's negligence in the conduct of that ongoing activity proximately caused her injuries and damages as set forth in Section VIII.

**COUNT THREE — PREMISES LIABILITY**
**(Plaintiff Jennifer Lynn Cain, Individually — Pleaded in the Alternative to Count Two)**

59. Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

60. The elements of a premises-liability claim brought by an invitee under Texas law are: (1) the owner or occupier had actual or constructive knowledge of a condition on the premises; (2) the condition posed an unreasonable risk of harm; (3) the owner or occupier did not exercise reasonable care to reduce or eliminate the risk; and (4) the owner or occupier's failure to use such care proximately caused the plaintiff's injuries. Plaintiff Jennifer Lynn Cain pleads and satisfies each element.

61. Element One — Actual or Constructive Knowledge of the Condition. Defendant had actual knowledge of the condition of the Subject Stairwell. Defendant designed, approved, installed, or accepted the uniform wood or wood-like tread, riser, and landing surfaces; Defendant designed, specified, installed, controlled, and maintained the stairwell lighting and its programmed levels; and Defendant, through its Manager on Duty, was expressly informed on the evening of April 5, 2024, before Plaintiff's fall, that one or more guests had fallen or nearly fallen on the Subject Stairwell. Mrs. Whitson's trip on the same stairwell that same day is further evidence of actual notice. Affiant Katherine Garza has sworn that a resort employee admitted that the dimly lighted stairwell had been discussed at an employee safety meeting the week before the Incident, and affiants Christopher Case and Jason Vitanza have each sworn that resort management admitted

the condition had been discussed at prior staff meetings. In the alternative, the condition had existed for so long, and was so open and obvious to Defendant's own personnel, that Defendant had constructive knowledge of it in the exercise of ordinary care.

62. Element Two — Unreasonable Risk of Harm. The condition of the Subject Stairwell posed an unreasonable risk of harm. Each of the following conditions independently posed such a risk, and in combination they compounded it: (a) the design of the stairwell lighting; (b) the inadequate level and misdirected placement of the illumination, which left the tread surfaces dim; (c) the use of wood or wood-like tread, riser, and landing materials of uniform grain, color, and sheen that concealed the tread edges; (d) the installation of those materials; (e) the absence of any contrasting nosing, contrast strip, abrasive strip, photoluminescent marking, or other visual or tactile demarcation; (f) the absence of any signage or warning; and (g) the condition of the handrails and the stairwell geometry, including tread depth, riser height, and tread-to-riser uniformity. Each constitutes a premises defect.

63. Element Three — Failure to Exercise Reasonable Care. Defendant failed to exercise reasonable care to reduce or eliminate the risk. Defendant neither made the condition reasonably safe nor adequately warned Plaintiff Jennifer Lynn Cain of it. Defendant did not raise the illumination, mark the tread edges, post a warning, treat the walking surface, repair or reposition the fixtures, station personnel, or close or reroute the stairwell — not before April 5, 2024, and not even after learning that evening that guests were falling on it. Ordinary care in these circumstances means that degree of care that would have been used by an owner or occupier of ordinary prudence under the same or similar circumstances.

64. Element Four — Proximate Cause and Damages. Defendant's failure to exercise reasonable care was a cause in fact of Plaintiff Jennifer Lynn Cain's fall and injuries, and the harm was foreseeable, as Defendant's same-evening knowledge of other falls conclusively demonstrates. Defendant's failure proximately caused her injuries and damages as set forth in Section VIII.

**COUNT FOUR — GROSS NEGLIGENCE**
**(Plaintiff Jennifer Lynn Cain, Individually)**

65. Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

66. Under Texas Civil Practice and Remedies Code § 41.001(11), "gross negligence" means an act or omission: (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others. Under Texas law a corporation may be held liable for gross negligence where the act or omission is that of a vice principal, or where the corporation authorized, approved, confirmed, or ratified it. Plaintiff Jennifer Lynn Cain pleads each element and will prove them by clear and convincing evidence as Texas Civil Practice and Remedies Code § 41.003 requires.

67. Element One — Objectively Extreme Degree of Risk. Viewed objectively from Defendant's standpoint on the evening of April 5, 2024, continuing to route guests down an inadequately lit interior staircase whose tread edges were visually indistinguishable from the landing, after having been told that guests had already fallen or nearly fallen on that very stairwell that very night, involved an extreme degree of risk. The probability of another fall was not

speculative; it had already occurred at least once that evening. The magnitude of the potential harm — fractures, head injury, spinal injury, or death from a fall down a hard-surfaced staircase — is severe.

68. Element Two — Actual, Subjective Awareness and Conscious Indifference. Defendant had actual, subjective awareness of that risk. Its Manager on Duty and vice principal, Elliote Walthour, was told that guests had fallen or nearly fallen on the Subject Stairwell earlier that same evening and, admitted as much. Mrs. Whitson had tripped on the same stairwell the same day. With that actual knowledge in hand, Defendant nevertheless proceeded with conscious indifference to the rights, safety, and welfare of its guests: it took no step whatsoever — not a warning, not a light adjustment, not a marking, not a posted employee, not a closure — and simply continued sending guests down the stair. Defendant's conscious indifference is established most directly by the sworn testimony of Jason Vitanza, who asked Defendant's night manager to rope off or block the Subject Stairwell and to place blue or fluorescent tape to mark the step before the landing, and whom the night manager refused on both requests because, in Mr. Vitanza's sworn words, he "was more concerned about not damaging the stairs." Defendant's conduct was that of a vice principal acting within the scope of his managerial authority and, in the alternative, was authorized, approved, confirmed, or ratified by Defendant.

69. Plaintiff Jennifer Lynn Cain is therefore entitled to recover exemplary damages from Defendant under Texas Civil Practice and Remedies Code § 41.003.

**COUNT FIVE — LOSS OF SPOUSAL CONSORTIUM**
**(Plaintiff Danny Cain)**

70. Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

71. Texas recognizes an independent but derivative cause of action for loss of spousal consortium arising from a third party's negligent injury to the other spouse. Consortium includes the mutual right of the spouses to that affection, solace, comfort, companionship, society, assistance, and sexual relations necessary to a successful marriage. Plaintiff Danny Cain pleads that Defendant's tortious conduct injured his wife, that he has been deprived of her consortium, and that he has been damaged thereby.

72. Element One — Defendant's Tortious Conduct Injured the Impaired Spouse. Defendant's negligence, negligent activity, premises defects, and gross negligence, as pleaded in Counts One through Four, proximately caused Plaintiff Jennifer Lynn Cain to sustain multiple fractures of her ankle, injury to her leg and back, and a head injury, that required surgical intervention. Those injuries are serious, permanent, and disabling. They have resulted in permanent physical impairment, permanent disfigurement, ongoing pain, and lasting limitation of her mobility and of her capacity to perform the activities and functions she performed before April 5, 2024.

73. Element Two — Loss of Consortium. As the lawful spouse of Jennifer Lynn Cain, Plaintiff Danny Cain has been deprived of, and continues to be deprived of, the mutual affection, solace, comfort, companionship, society, emotional support, assistance, sexual relations, and household services of his wife. The marital relationship has been seriously impaired. Mr. Cain has additionally been required to assume the household and caretaking functions his wife previously performed.

74. Element Three — Damages. Plaintiff Danny Cain seeks damages for his loss of spousal consortium sustained in the past and to be sustained in the future, together with the value of household services lost, in amounts to be determined by the jury. This claim is derivative of Plaintiff Jennifer Lynn Cain's claims, and Plaintiff Danny Cain pleads and proves Defendant's liability to her as an element of his own claim.

**COUNT SIX — LOSS OF PARENTAL CONSORTIUM**
**(Plaintiff C.C., a Minor, by and through Next Friend Jennifer Lynn Cain)**

75. Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

76. Texas recognizes a minor child's cause of action for loss of parental consortium where the child's parent sustains a serious, permanent, and disabling injury. Loss of parental consortium encompasses the loss of the parent's love, affection, protection, emotional support, services, companionship, care, and society. Plaintiff C.C. pleads and satisfies each element.

77. Element One — Serious, Permanent, and Disabling Injury to the Parent. Defendant's tortious conduct, as pleaded in Counts One through Four, proximately caused C.C.'s mother, Plaintiff Jennifer Lynn Cain, to sustain the serious, permanent, and disabling injuries described above, including multiple ankle fractures requiring surgery, back injury, head injury, permanent physical impairment, and permanent disfigurement.

78. Element Two — Loss of Parental Consortium. As a direct consequence, C.C. has been deprived of the love, affection, protection, emotional support, services, companionship, care, guidance, and society of her mother. The parent-child relationship has been seriously impaired.

Mrs. Cain's injuries, surgery, immobilization, recovery, and permanent limitations have materially diminished her ability to care for, supervise, play with, transport, and nurture C.C. in the manner she did before April 5, 2024.

79. Element Three — Damages. Plaintiff C.C. seeks damages for loss of parental consortium sustained in the past and to be sustained in the future, in an amount to be determined by the jury, taking into account the severity of the injury to the parent and its actual effect upon the parent-child relationship, C.C.'s age, the nature of C.C.'s relationship with her mother, C.C.'s emotional and physical characteristics, and whether other consortium-giving relationships are available to C.C. This claim is derivative of Plaintiff Jennifer Lynn Cain's claims.

**COUNT SEVEN — BYSTANDER RECOVERY FOR MENTAL ANGUISH**
**(Plaintiff C.C., a Minor, by and through Next Friend Jennifer Lynn Cain)**

80. Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

81. Although Texas does not recognize a general cause of action for negligent infliction of emotional distress, Texas does permit bystander recovery for mental anguish. To recover as a bystander, a plaintiff must establish: (1) the plaintiff was located at or near the scene of the accident, as contrasted with one who was a distance away from it; (2) the plaintiff suffered shock as a result of a direct emotional impact from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence; (3) the plaintiff was closely related to the primary victim of the accident; (4) and defendant negligently inflicted serious bodily injury and severe mental anguish.

82. Element One — Proximity to the Scene. Plaintiff C.C. was located at or in the immediate vicinity of the Subject Stairwell at the time Plaintiff Jennifer Lynn Cain fell. C.C. was not a distance away from the scene.

83. Element Two — Sensory and Contemporaneous Observance. The mental anguish of Plaintiff C.C. resulted from a direct emotional impact upon C.C. arising from C.C.'s own sensory and contemporaneous observance of the fall and its immediate aftermath — including Mrs. Cain's cry as she fell, her landing at the base of the stairwell, her evident and severe injuries, and the emergency response that followed on the stairwell itself. C.C. did not learn of the Incident from third persons after its occurrence. Two affiants heard C.C. exclaim, "my mom fell," in the moments immediately following the fall, and four affiants observed the child's distress at the scene.

84. Element Three — Close Relationship. Plaintiff C.C. is the minor child of Plaintiff Jennifer Lynn Cain and stands in the closest of family relationships to the victim.

85. Element Four — Damages. Defendant negligently inflicted serious bodily injury upon Plaintiff Jennifer Lynn Cain, as pleaded in Counts One through Three. Plaintiff C.C. suffered, and continues to suffer, severe mental anguish as a proximate result of contemporaneously perceiving that injury, and seeks damages for mental anguish sustained in the past and to be sustained in the future in an amount to be determined by the jury.

## VIII.
## CAUSATION AND DAMAGES

86. Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein. Each category of damages set forth below was proximately caused by the acts and omissions of Defendant pleaded above.

87. A. Plaintiff Jennifer Lynn Cain, Individually. Plaintiff Jennifer Lynn Cain seeks the following damages, sustained in the past and reasonably probable to be sustained in the future: physical pain and suffering; mental anguish; reasonable and necessary medical, hospital, surgical, pharmaceutical, rehabilitative, and related expenses; physical impairment; disfigurement; lost wages and lost earnings; loss of earning capacity; and the reasonable value of household services she is no longer able to perform.

88. B. Plaintiff Danny Cain. Plaintiff Danny Cain seeks the following damages, sustained in the past and reasonably probable to be sustained in the future: loss of spousal consortium, including the loss of the affection, solace, comfort, companionship, society, emotional support, assistance, and conjugal relations of his wife; and the reasonable value of household services lost.

89. C. Plaintiff C.C., a Minor. Plaintiff C.C., by and through Next Friend Jennifer Lynn Cain, seeks the following damages, sustained in the past and reasonably probable to be sustained in the future: loss of parental consortium, including the loss of the love, affection, protection, emotional support, services, companionship, care, guidance, and society of her mother; and mental anguish as a bystander to the Incident.

90. D. Exemplary Damages. Plaintiff Jennifer Lynn Cain further seeks exemplary damages against Defendant under Texas Civil Practice and Remedies Code § 41.003 for the gross negligence pleaded in Count Four.

91. Pursuant to Federal Rule of Civil Procedure 8(a)(3), Plaintiffs seek monetary relief in excess of $1,000,000.00, together with all other relief to which they are justly entitled, which amount may change with the passage of time and the further development of the evidence.

## IX.
## CONDITIONS PRECEDENT

92. All conditions precedent to Plaintiffs' recovery, if any, have been performed or have occurred.

## X.
## ALTERNATIVE PLEADINGS

93. To the extent any facts or causes of action pleaded herein are in conflict, they are pleaded in the alternative pursuant to Federal Rule of Civil Procedure 8(d). Counts Two and Three are expressly pleaded in the alternative to one another, and Plaintiffs do not seek duplicative recovery for the same injury.

## XI.
## JURY DEMAND

94. Plaintiffs demand a trial by jury on all claims and issues so triable, pursuant to Federal Rule of Civil Procedure 38(b) and the Seventh Amendment to the United States Constitution.

## XII.
## RESERVATION OF RIGHT TO AMEND

95. Plaintiffs reserve the right, subject to Federal Rules of Civil Procedure 15 and 16 and the Court's Scheduling Order, to amend or supplement these pleadings based upon information developed in discovery.

## XIII.
## SPOLIATION INSTRUCTION AND NOTICE TO PRESERVE EVIDENCE

96. Consistent with the Court's April 14, 2026 Scheduling Order directing all parties to immediately implement a litigation hold, Plaintiffs again demand that Defendant preserve and maintain all evidence pertaining to any claim or defense in this action, including without limitation incident reports; surveillance video and recordings; photographs; maintenance, inspection, and work-order records; lighting specifications, photometric studies, and lamp-replacement logs; prior incident reports, guest complaints, and near-miss reports; contracts, franchise agreements, and management agreements; correspondence, emails, text messages, and instant messages; personnel and training records; claims files and loss runs; and all other electronically stored information. Failure to preserve such materials constitutes spoliation of relevant evidence and will subject Defendant to sanctions and an adverse-inference instruction at trial.

## XIV.
## DESIGNATED SERVICE EMAIL ADDRESSES

97. The following are counsel's designated email addresses for service of all documents and notices in this action: efiling@hdzfirm.com and service@linoslaw.com.

## XV.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs Jennifer Lynn Cain, Individually and as Next Friend of C.C., a Minor, and Danny Cain respectfully pray that Defendant be cited to appear and answer, and that upon final trial Plaintiffs recover judgment against Defendant for:

a. actual and compensatory damages for Plaintiff Jennifer Lynn Cain, including physical pain and suffering, mental anguish, medical and related expenses, physical

impairment, disfigurement, lost wages and earnings, loss of earning capacity, and loss of household services, in the past and in the future;

b. damages for Plaintiff Danny Cain for loss of spousal consortium and loss of household services, in the past and in the future;

c. damages for Plaintiff C.C., a Minor, for loss of parental consortium, in the past and in the future, and for mental anguish as a bystander;

d. exemplary damages in favor of Plaintiff Jennifer Lynn Cain pursuant to Texas Civil Practice and Remedies Code § 41.003;

e. pre-judgment interest at the maximum rate allowed by law;

f. post-judgment interest at the maximum rate allowed by law;

g. all costs of court; and

h. all other and further relief, at law or in equity, to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,
**HERNANDEZ LAW FIRM, P.C.**
4841 S. Jackson Road
Edinburg, Texas 78539
Telephone: (956) 369-4480
Facsimile: (979) 822-6001

______________________________
Daniel M.L. Hernandez

State Bar No. 24034479
Federal I.D. No. 35338
Email: efiling@hdzfirm.com
**AND**

**THE LAW OFFICE OF LINO H. OCHOA**
Lino H. Ochoa
State Bar No. 00797168
Federal I.D. No. 272425
service@linoslaw.com
6316 N. 10th Street. Building D., Suite 102
McAllen, Texas 78504
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on August 3rd, 2026, a true and correct copy of the foregoing Plaintiffs' First Amended Complaint was served on all counsel of record via the Court's CM/ECF electronic filing system in accordance with Federal Rule of Civil Procedure 5(b)(2)(E) and Local Rule CV-5.

______________________________
Daniel M.L. Hernandez